# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| LOUIS HINTZE BRIGGS II, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | Case No. CV415-062 |

# REPORT AND RECOMMENDATION

Alleging disability due to sleep apnea, gout, high blood pressure, back, shoulder, ankle, and hip issues, as well as chronic pain from generalized osteoarthritis, plaintiff Louis Briggs seeks judicial review of the Social Security Commissioner's denial of his application for a period of disability and Disability Insurance benefits (DIB). Doc. 10 at 4.[1]

# I. GOVERNING STANDARDS

In social security cases, courts:

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at Doc. 6.

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the Administrative Law Judge (ALJ) applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work

2

experience.[1] An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnotes added).

"For DIB claims, a claimant is eligible for benefits where []he demonstrates disability on or before the last date for which []he w[as] insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because [Briggs'] last insured date was December 31, [2015 (tr. 31)], h[is] DIB appeal requires a showing of disability on or before that date." *Moore*, 405 F.3d at 1211.

## II. ANALYSIS

Briggs, 46 when the ALJ denied his DIB application (Tr. 43, 152) and 43 on his alleged onset date (Tr. 35), has four years of college education (Tr. 193) and past work experience as a logistics technician in

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

the U.S. Army and as an ROTC instructor at Georgia Southern University. Tr. 60. Now 49, he suffers from degenerative joints that cause severe chronic pain, gout, high blood pressure, and sleep apnea. Tr. 192.

Briggs protectively filed for DIB on August 12, 2011 (Tr. 152), alleging a disability onset of June 16, 2010. Tr. 181. Following administrative denial, he attended and testified at a hearing on July 16, 2013 before the ALJ, who later denied his application. Tr. 43. Although the ALJ found that Briggs' "degenerative disc disease of the lumbar and cervical spine, and left hip arthroplasty" constituted severe impairments (Tr. 33), he concluded, after consulting a vocational expert, that Briggs retained the RFC for sedentary work, including his past work as an instructor. Tr. 41. The ALJ thus found him "not disabled" because (1) he could return to his past work, and (2) other jobs that he could perform exist in significant numbers in the national economy. Tr. 42.

To Briggs, that's error. He argues that the ALJ failed to properly weigh medical evidence when he discounted the opinion of Dr. Amy Pearson, Briggs' treating pain management physician, and fully credited

4

the opinion of Dr. William McRae, a consultative examiner for the Social Security Administration. *See* doc. 11 at 12. Compounding that error, says Briggs, the ALJ "failed to properly evaluate [his] credibility" by measuring his subjective pain reports against "sporadic activities of daily living" and objective medical evidence the ALJ read to "not substantiate [his] statements." *Id.* at 18.

## A. Weighing Medical Evidence

### 1. Dr. Pearson

In affording Pearson's opinion "only partial weight," the ALJ found that it rested "primarily upon [Briggs'] subjective allegations of pain . . . notwithstanding [Pearson's] notes . . . and examination findings that [he] had only mild limitations in his range of motion of the cervical and lumbar spine, crepitus," and MRI results, "which indicated no rotator cuff tear." Tr. 40. The ALJ also noted that Pearson's observation that Briggs' constant pain "would be severe enough to interfere with attention and concentration" conflicted with his "description of his own activities[,] including using a computer frequently, and caring for his young son, as well as doing household

chores." *Id.* What's more, opined the ALJ, "Pearson's opinion . . . [was] likely motivated by the possibility that [she was] expressing [her] opinion in an effort to assist [Briggs] with whom . . . she sympathizes," or was a response to satisfy an "insistent and demanding" patient. *Id.*

Briggs complains that the ALJ "grossly mischaracterized the record" by concluding that Pearson "based her opinions primarily on . . . subjective statements," not clinical evidence. Doc. 11 at 12. He also, according to Briggs, failed "to identify substantial evidence" that contradicted Pearson's opinions or supported his conclusion that Briggs' daily activities conflicted with her opinion. *Id.* at 13-15. Finally, Briggs contends that the ALJ "inappropriately speculated that Dr. Pearson 'likely' rendered h[er] opinion because [s]he 'sympathizes' with" Briggs. Doc. 11 at 12-15. Absent the ALJ's errors, "Pearson's assessment of [his] physical impairments should have been afforded controlling weight." *Id.* at 16.

"The opinion of a treating physician, such as Dr. [Pearson], 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (cites omitted). "As a general rule, 'the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.' *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006)." *Black v. Colvin*, 2015 WL 7185506 at * 3 (S.D. Ga. Nov. 13, 2015), *adopted*, 2016 WL 296260 (S.D. Ga. Jan. 12, 2016).

No substantial evidence demonstrates good cause to afford Pearson's opinion only "partial weight." Although she certainly relied in part on Briggs' subjective statements of pain (as a pain management

specialist, how could she not?),[2] her opinion ultimately rested on a bedrock of clinical data and objective observations. For example, when Briggs "first presented to [her] pain clinic on May 21, 2010," she confirmed a diagnosis of "generalized osteoarthritis with severe chronic joint pain" based on (1) his medical history (which included a total left hip replacement at a very young age), (2) a physical exam (which revealed tenderness and mild swelling in multiple joints), and (3) an MRI, "which showed advanced osteoarthritis" in his right shoulder. Tr. 372. Two and three months thereafter, her notes again indicate that objective examination revealed severe shoulder inflammation. Tr. 402, 404. None of those data points qualifies as subjective pain reporting.[3]

---

[2] As federal regulations and precedent recognize, disability stemming from severe pain oftentimes is evidenced by subjective statements of pain. *See* 20 C.F.R. § 404.1529; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Such statements carry more weight when buttressed by objective data, *see Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2005), but to discount Pearson's opinion because it relied in part on Briggs' pain reporting would ignore the common sense reality that pain is an inherently subjective symptom that cannot be captured by, for example, a blood test.

[3] A plethora of clinical evidence supports Pearson's opinion beyond just the limited examples given above. *See, e.g.*, Tr. 478 (right shoulder MRI results showing a variety of abnormalities); 402, 404, 408 (various joints "tender to [Pearson's] palpation"); 411 (spinal impairment questionnaire noting "marked" limitation in

To conclude that Pearson's opinion relied "primarily upon [Briggs'] subjective allegations of pain," the ALJ contrasted it with "her notes in her statement and examination findings that [Briggs] had only mild limitations in his range of motion of the cervical and lumbar spine, crepitus, and the MRI results which indicated no rotator cuff tear." Tr. 40. That's an inaccurate and incomplete picture of Pearson's notes. At no point did she state that Briggs suffered only "mild" lumbar range of motion limitations. Instead, she observed *"marked limitations all planes"* for the lumbar range. Tr. 411 (emphasis added). And the MRI, despite showing no rotator cuff tear, did reveal "glenohumeral[4] osteoarthritis with labral deformity and deformity of the glenoid and the humeral head," not to mention supraspinatus tendonosis.[5] Tr. 395 (footnote added). That was enough for Pearson to recommend that Briggs consider a complete shoulder replacement. Tr. 396.

---

Briggs' lumbar range of motion).

[4] "Glenohumeral," in layman's terms, essentially means shoulder.

[5] Supraspinatus tendonosis is inflammation of the tendon connected to a small muscle on the upper back (the supraspinatus).

9

The ALJ's recitation of Briggs' daily activities -- that Briggs used a computer frequently, cared for his young son, and did household chores -- suffers the same misrepresentative flaw. Tr. 40. Briggs testified that he could feed his son "because he can sit on me . . . but as far as like picking him up, putting him down, I can't do that," not that he cared for him, much less regularly. Tr. 67. When asked if he did "any stuff to help out around the house," Briggs responded that "I don't do anything. I, I do -- I will put the dishes in the dishwasher and I will hose off the, the back patio sometimes." Tr. 67. That's not precisely "doing household chores," as the ALJ characterized it. Tr. 40. Briggs rarely if ever fixes his own meals (Tr. 66), never leaves the house to shop (at least in part because he cannot safely drive because of pain medications, tr. 65), and makes it to church about "two Sundays within a month." Tr. 69. He does spend time on a computer, but he never said how often. Instead, he stated that he pays bills and shops online, but that the majority of his day is spent "sitting in a chair, watching TV."[6] Tr. 67.

---

[6] Even if the ALJ accurately reported Briggs' daily activities (he did not), the Court

The ALJ's final reason for only partially crediting Pearson's opinion -- that it "is likely motivated" by sympathy for Briggs and thus given "in an effort to assist her patient" (Tr. 40) -- is, unlike his two other reasons, not a misrepresentation. It's rank speculation that merits no deference and renders his disability determination reversible. *See Gallegos v. Colvin*, 2016 WL 705227 at * 5 (W.D. Tex. Feb. 18, 2016) ("[T]he ALJ's statement that it was possible that Dr. Zayas had

---

doubts whether substantial evidence supports his conclusion that they are inconsistent with Pearson's opinion that his pain "constantly" interferes with his attention and concentration. Feeding a child at times, putting dishes in a dishwasher, and using a computer are not activities broadly inconsistent with attention and concentration deficits. *See Lewis,* 125 F.3d at 1441 ("[W]e are unsure that Lewis's successful completion of a six minute treadmill exercise is necessarily indicative of his ability to work. Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability. . . ."). Regardless, those activities are only part of the picture the record paints and the Court cannot look at them in isolation in considering whether the ALJ's decision is supported by substantial evidence. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) ("We have consistently held that in ascertaining whether the Secretary's findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must 'view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Secretary].'"); *cf. Smith v. Califano*, 637 F.2d 968, 971072 (3d Cir. 1981) ("The ALJ seems to have relied heavily on the fact that claimant had testified that he had full use of his hands, arms and legs, does shopping and last fall went hunting twice. Yet, statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").

sympathy for Plaintiff or wanted to avoid tension in his relationship with Plaintiff is entirely speculative and constitutes error."); *Trujillo v. Astrue*, 2013 WL 706270 at * 5 (D. Utah Feb. 26, 2013) ("[T]he ALJ's boilerplate statements that Dr. Gardner may have sympathized with the Plaintiff and satisfied her requests for an opinion regarding her disability in order to avoid unnecessary doctor-patient tension constitutes improper speculation and inadequate lay opinion judgment by the ALJ.").[7] Nothing in the record remotely suggests that Pearson lied to support her patient or to prevent doctor-patient tension. In fact, the clinical data supporting Pearson suggests that she drew her conclusions from entirely appropriate sources.

Most importantly, by misrepresenting the MRI results,

---

[7] Apparently, those "boilerplate statements" have infected disability appeals around the country. *See, e.g., Tully v. Colvin*, 943 F. Supp. 2d 1157, 1168 (E.D. Wash. 2013) (repeating the same sympathy and tension language as the ALJ used here); *Gallegos*, 2016 WL 705227 at * 5 (same); *Sullivan v. Colvin*, 2013 WL 2155115 at * 5 (W.D. Ark. May 17, 2013) (same). *See also Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits. While the Secretary may introduce evidence of actual improprieties, no such evidence exists here.") (quotes and cites omitted). Unless supported by substantial evidence "which insinuates that [a treating physician] leaned over backwards to support [a p]laintiff's application for disability," such statements have no place in an ALJ's opinion. *Gallegos*, 2016 WL 705227 at * 5. Using them to undergird benefits denials, as the ALJ did in this case, constitutes error and will not be tolerated.

incorrectly noting Briggs' lumbar range of motion limitation, misrepresenting Briggs' daily activities, and using unsupported speculation as a reason to discredit a treating physician, the ALJ boldly highlighted the lack of substantial evidentiary support for rejecting Pearson's opinion. Because that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record,"[8] the ALJ should have afforded it "controlling weight." 20 C.F.R. § 404.1527(c)(2). That's not to say that Pearson's opinion that Briggs is "100%, permanently disabled" (Tr. 372) is itself controlling. It's not. *See Denomme v. Commissioner, Social Security Admin.*, 518

---

[8] The ALJ gave great weight to McRae, a one-time consultative examiner, who, without ever reviewing Briggs' medical records, concluded that he suffered "[m]ild functional limitations . . . due to his left hip and bilateral shoulder pain." Tr. 41. In doing so, the ALJ summarized McRae's findings in great detail, but for a weighting rationale stated only that his opinion "addresses [Briggs'] functional limitations after an examination of the claimant which indicated that the claimant has no evidence of cyanosis, clubbing or edema, [and] a blood pressure of 148/94." *Id.* Such a vague, lightly supported, opinion is not substantial evidence and thus not entitled to great weight. *See Collas v. Colvin*, 2015 WL 668734 at * 5 (M.D. Fla. Feb. 17, 2015) (*treating* physician's "vague observations of pain" not material); *see also Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (expert opinion can be deemed insubstantial when it describes a claimant's impairments in terms so vague as to render it useless in evaluating RFC).

F. App'x 875, 877-78 (11th Cir. 2013) ("[T]he Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.") (citing 20 C.F.R. § 404.1527(d)(1)). But it does mean that Pearson's opinion about Briggs' functional limitations was entitled to deference and controlling weight.

## B. Briggs' Credibility

In addition to contesting the partial weight afforded Pearson, Briggs argues that the ALJ's skepticism of his subjective limitation allegations lacks substantial evidentiary support. Doc. 11 at 17. Where, as here, a claimant attempts to establish disability through his own testimony of subjective limitations, the "pain standard" applies. *Dyer*, 395 F.3d at 1210. That demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Watson v. Colvin*, 2015 WL 8467014 at * 6 (S.D. Ga. Nov. 18, 2015) (quoting *Holt*, 921 F.2d at 1223).

As the Eleventh Circuit explained:

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt*, 921 F.2d at 1223.

The ALJ found that Briggs had a qualifying medical condition whose severity could reasonably be expected to give rise to the reported pain, but also found Briggs "not entirely credible." Tr. 40. Although he then articulated reasons, they fall well short of adequate. *See Holt*, 921 F.2d at 1223.

The ALJ first reiterated that Briggs' daily activities were "not consistent with total disability." Tr. 40. But as discussed above, he grossly misrepresented those activities and in doing so failed to consider the entire record, including the parts that "detract[] from the evidence [he] relied on." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). What's more, he provided no reasons why Briggs' activities are

15

inconsistent with a disability finding -- he simply concluded they were. Tr. 40. That amounts to an inadequate "broad rejection" of a claimant's pain report that is unable to withstand judicial scrutiny. *See id.*; *Buchanan v. Astrue*, 2012 WL 6085155 at * 7 (S.D. Ga. Oct. 26, 2012), *adopted*, 2012 WL 6085151 (S.D. Ga. Dec. 6, 2012) (ALJ's "simpl[e] conclu[sion] that Plaintiff's activities of daily living [were] well beyond those of an individual who is completely disabled" qualifies as "an additional basis for remanding th[e] case").

The ALJ also cited "EKG, blood chemistry, and imaging studies" as supporting "a finding that [Briggs'] impairments were only mildly limiting." Tr. 40. EKG and blood chemistry studies, however, are irrelevant to a disability determination when the claimant suffers from the severe pain caused by a panoply of musculoskeletal problems. And the imaging study cited is yet another case of the ALJ cherry picking medical records for only those tidbits that can be crafted to justify denying benefits. The October 29, 2011 MRI showed, as the ALJ correctly noted, "no evidence of rotator cuff tear, "mild" tendinosis, and

an intact teres minor.[9] But those findings related only to Briggs' acromioclavicular joint.[10] Tr. 479. The scan also revealed "questionable thickening of the inferior glenohumeral ligament, suggestive of adhesive capsulitis;" "[a]dvanced degenerative changes [to] the glenohumeral joint with joint space narrowing, spurring and subchondral cystic/sclerotic changes;" and "fluid surrounding the . . . biceps tendon," which contained "internal adhesions compatible with stenosing tenosynovitis."[11] *Id.* Ignoring that objective clinical data in favor of, yet again, cherry picking supportive phrases cements a pattern of failing to consider the entire record and cannot be countenanced. *See Foote*, 67 F.3d at 1561.

Properly considering that record -- the *whole* record, without omission or misrepresentation -- reveals no inconsistencies between

---

[9] The teres minor is a narrow, elongated muscle that runs from the shoulder diagonally down towards the scapula. As part of the rotator cuff, it helps hold the humerus in the shoulder socket.

[10] The acromioclavicular (AC) joint is the junction between the highest point on the scapula and the clavicle (collarbone).

[11] Stenosing tenosynovitis, commonly known as "trigger finger," is an inflammation of tendons in the hand that can lead to thickening and nodule formation on those tendons.

17

objectively determinable conditions and Briggs' subjective pain reports. His testimony therefore deserved credit.

## IV. CONCLUSION

Because the ALJ erred by affording Pearson's opinion only partial weight and by discrediting Briggs' own pain report, the Commissioner's final decision should, pursuant to sentence four of 42 U.S.C. § 405(g) be **REVERSED** and this case **REMANDED** for further consideration in accordance with this opinion.

**SO REPORTED AND RECOMMENDED**, this  3rd  day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA